## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN D. BUCHERT, JR., | ) | |
| | ) | CASE NO. 3:13-cv-01418 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff John D. Buchert, Jr. ("Buchert") challenges the final decision of the Acting

Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a

Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security

Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§

416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the

consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

### I.  Procedural History

On December 22, 2009, Buchert filed an application for POD, DIB, and SSI alleging a

disability onset date of June 30, 2006.  (Tr. 14.)  His application was denied both initially and

upon reconsideration.  Buchert timely requested an administrative hearing.

On May 21, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Buchert, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 14.)  On June 8, 2012, the ALJ found Buchert was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 24.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

### Personal and Vocational Evidence

Age thirty-nine (39) at the time of his administrative hearing, Buchert is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).  (Tr. 23.)  Buchert has a high school education and past relevant work as a crew truck driver, dishwasher/busboy, and carry-out worker.  (Tr. 23.)

### Relevant Medical Evidence

During an initial psychiatric evaluation on March 16, 2010, Buchert was seen by psychiatrist Irfan Ahmed, M.D.  (Tr. 302-305.)  Dr. Ahmed noted that Buchert had recently been admitted to "Rescue Crisis" in the last week of February 2010 secondary to worsening depression, homicidal ideation, and command hallucinations.  (Tr. 302.)  He was prescribed Abilify and Celexa at that time, and was taking his medications regularly since then.  *Id*.  Buchert presented as sad and withdrawn, and stuttered while he spoke.  *Id*.  He reported depressed mood, irritability, crying spells, problems with sleep, and "on-and-off" thoughts of hurting his brother.  *Id*.  He denied current suicidal ideation.  *Id*.  He had thought about suicide in the past, but never had a plan and never made an attempt.  *Id*.  Buchert also reported hearing

2

voices, seeing ghosts at night, and suffering paranoia and panic attacks.  (Tr. 303.)  Dr. Ahmed reported that Buchert had no significant past psychiatric history and had not been seen by a psychiatrist or therapist since he was little.  *Id.*  Dr. Ahmed also opined that Buchert had no significant past medical history other than a stuttering problem since he was a boy.  *Id.*  Buchert indicated that he was a slow learner and had a low IQ, but finished high school.  (Tr. 304.)  He had applied for social security.  *Id.*  He had been to jail for buying stolen property.  *Id.*  Dr. Ahmed noted Buchert's substance abuse history was not significant.  *Id.*

On the same date, upon mental status examination, Dr. Ahmed found Buchert appeared older than his stated age; was stressed out; but was cooperative and friendly.  *Id.*  Buchert had poor to fair grooming, made poor eye contact, and had difficulty finishing most sentences.  *Id.* Buchert had no psychomotor agitation or retardation, exhibited a dysphoric and anxious mood with congruent affect, and his thought content was logical and goal-directed but had some "paranoid flavor."  *Id.*  There was no evidence of auditory or visual hallucinations or delusions. *Id.*  He had difficulty with immediate recall and long-term memory, but short-term memory, and abstract-reasoning were fine.  *Id.*  Buchert had below average intelligence with poor to fair insight and judgment.  *Id.*  He was alert, awake, and oriented.  *Id.*  Dr. Ahmed diagnosed schizoaffective disorder, depressed type, and anxiety disorder, not otherwise specified.  (Tr. 305.)  He ruled out major depressive disorder, severe with psychotic features, and psychosis not otherwise specified.  *Id.*  Buchert was ascribed a Global Assessment of Functioning (GAF) score of 50.[1]  *Id.*  His prescriptions for Abilify and Celexa were increased.  *Id.*

---

[1] The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV").  An individual's GAF is rated

On April 6, 2010, Dr. Ahmed reported that Buchert appeared calm, relaxed, and in a fair mood, though he was still hearing voices and feeling sad. (Tr. 332.) Buchert reported taking medications regularly and tolerating them well with no side effects. *Id*. Buchert exhibited fair hygiene and grooming; fair eye contact; no psychomotor agitation or retardation; and, a somewhat dysphoric and withdrawn mood with congruent affect. *Id*. Buchert denied any suicidal or homicidal ideation. *Id*. He was cooperative and interactive, but spoke with a stutter. *Id*. There was no evidence of auditory/visual hallucinations or paranoid delusions. *Id*. His insight and judgment were fair. *Id*. Dr. Ahmed increased the dosage of Celexa and Abilify. (Tr. 333.)

On May 26, 2010, Douglas Pawlarczyk, Ph.D., a state agency psychologist, reviewed the evidence of record and opined that Buchert could perform simple, repetitive work that involved no strict production quotas, no public contact, and only minimal contact with co-workers. (Tr. 289.)

On June 9, 2010, Buchert was seen by Dr. Ahmed after missing his last few appointments. (Tr. 329.) Buchert reported that he had not been taking all of his medications and was hearing and seeing things. *Id*. He also stated he was "stressed out." *Id*. He noted that

---

between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  DSM-IV at 34.  A GAF score between 51 - 60 denotes "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)."  DSM-IV at 34.  It bears noting that a recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

Celexa was helping with depression. *Id.* Buchert was cooperative, interactive, and exhibited fair grooming, stuttering speech and eye contact, but a somewhat dysphoric and anxious mood with congruent affect. *Id.* Buchert denied any major mood swings or suicidal/homicidal ideation. *Id.* His thought content was logical and goal-directed; there was no evidence of auditory/visual hallucinations or paranoid delusions. *Id.* His insight and judgment were fair. *Id.* Dr. Ahmed continued to prescribe the same medications at an unaltered dosage, but did add Trazadone to help with sleep. (Tr. 330.)

On July, 12, 2010, Buchert reported to Dr. Ahmed that he had been doing fairly well. (Tr. 328.) He appeared calm and relaxed. *Id.* He tolerated his medications well, reporting no side effects. *Id.* Buchert denied experiencing any major depressive or psychotic symptoms. *Id.* Buchert exhibited fair hygiene and grooming; fair eye contact; spontaneous speech with normal rate, volume, and tone; no psychomotor agitation or retardation; a euthymic mood with congruent affect; no suicidal or homicidal ideation; no evidence of auditory or visual hallucinations; no paranoid delusions; and, fair insight and judgment. *Id.* Dr. Ahmed continued to prescribe the same medication without alteration. *Id.*

On August 9, 2010, Dr. Ahmed indicated Buchert appeared calm and relaxed with a fair mood. (Tr. 326.) Buchert reported doing fairly well on the medications and that his mood had been stable. *Id.* He reported no side effects from his medications, no mood swings, no auditory or visual hallucinations, and no paranoia. *Id.* He was casually dressed with fair hygiene and grooming, and had fair eye contact; spontaneous speech with normal rate, volume, and tone; no psychomotor agitation or retardation; a euthymic mood with congruent affect; and, fair insight and judgment. *Id.* (Tr. 326.) Dr. Ahmed continued to prescribe Trazadone and Abilify, but

reduced the dosage of Celexa.  (Tr. 327.)

On September 20, 2010, Dr. Ahmed reported that Buchert appeared calm and relaxed with a fair mood.  (Tr. 325.)  Buchert reported taking his medications regularly and tolerating them well without side effects.  *Id*.  "He said at times, he still hears voices, but overall he is feeling a lot better.  No other issues." *Id*. Buchert exhibited fair hygiene and grooming; made fair eye contact; had spontaneous speech with normal rate, volume, and tone; had no psychomotor agitation or retardation; and had a "less dysphoric" mood with congruent affect. *Id*.  He denied suicidal/homicidal ideation.  *Id*.  There was no evidence of auditory/visual hallucinations or paranoid delusions.  *Id*.  His insight and judgment were fair.  *Id*.  Dr. Ahmed increased Abilify, and continued Celexa and Trazadone.[2]  *Id*.

On November 12, 2010, Steven Meyer, Ph.D., a state agency psychologist, reviewed the evidence in connection with Buchert's request for reconsideration.  (Tr. 339.)  Dr. Meyer reviewed the updated record, found no worsening in Buchert's mental condition, and agreed with Dr. Pawlarczyk's opinion.  *Id*.

On September 16, 2011, Dr. Ahmed completed a Medical Source Statement indicating he saw Buchert once a month and that his prognosis was guarded.  (Tr. 341.)  Dr. Ahmed checked boxes on the form indicating that Buchert was "seriously limited" in 25 out of 25 areas.  (Tr. 342-43.)  Dr. Ahmed also opined that Buchert would be absent about 4 days per month.  *Id*.

On October 18, 2011, Dr. Ahmed found that Buchert appeared calm, relaxed, and in a fair mood.  (Tr. 378.)  "He reports his hearing voices are much better, but at times he hears a few

---

[2]  Neither party points to any psychiatric treatment records occurring after this visit in September of 2010 until October of 2011 – a gap of over one year.

voices, but they are not as stressing to him." *Id*.  Buchert was more concerned about his living situation and his upcoming Social Security hearing, "but other than that he is doing fine." *Id*. Buchert indicated that he was medication compliant without any side effects. *Id*.  Dr. Ahmed reported that Buchert had fair hygiene and grooming; fair eye contact; spontaneous speech with normal rate, volume, and tone; no psychomotor agitation or retardation; and, an anxious mood with congruent affect. *Id*.  Buchert denied suicidal/homicidal ideation. *Id*.  Dr. Ahmed observed no symptoms of psychosis and no tics or abnormal movements. *Id*.  Buchert's insight and judgment were assessed as fair. *Id*.  Dr. Ahmed continued prescribing medication, reducing Abilify to 15 mg.[3]  (Tr. 379.)

On December 14, 2011, Buchert was seen by Jaylata Patel, M.D.  (Tr. 383-85.)  Buchert reported that "he is doing much better with the medications, but he sometimes still hears some voices.  He said it does not happen every day, but he hears them every now and then."  (Tr. 383.) Buchert reported using marijuana and cocaine occasionally, but not in the last month. *Id*. Buchert presented as casually dressed and groomed; was able to carry on coherent, spontaneous, and goal-directed conversation; and, had an organized thought process.  (Tr. 383-84.)  Buchert reported no suicidal or homicidal thoughts, no paranoia, and an improved mood.  (Tr. 384.) Buchert stated his prescription for Abilify had been reduced, but he did not know why.  (Tr. 383.)  Dr. Patel increased the dosage of Abilify.  (Tr. 384.)  Dr. Patel also encouraged Buchert to stop using drugs and alcohol.  (Tr. 383.)

---

[3]  At the last visit referenced by the parties, on September 20, 2010, Buchert's prescription for Abilify was increased from 15 mg to 20 mg.  (Tr. 325, 327.)

7

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[4]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Buchert was insured on his alleged disability onset date, June 30, 2006, and remained insured through March 31, 2010.  (Tr. 16.)  Therefore, in order to be entitled to POD and DIB, Buchert must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[4]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905;

*Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a

claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and

416.1201.

## IV.  Summary of Commissioner's Decision

The ALJ found Buchert established medically determinable, severe impairments, due to

anxiety disorder, moderate dysfluency disorder, and schizoaffective disorder.  (Tr. 16.)

However, his impairments, either singularly or in combination, did not meet or equal one listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 16.)  Buchert was found incapable of performing his

past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a

full range of work at all exertional levels with some non-exertional limitations.  (Tr. 18, 23.)

The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE

testimony to determine that Buchert was not disabled.  (Tr. 24-25.)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed

if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

9

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.

10

Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996);

*accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is

not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

*McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9,

2010).

## VI.  Analysis

### *Treating Physician*

In his sole assignment of error, Buchert asserts that the ALJ erred by rejecting the opinions

of his treating psychiatrist, Dr. Ahmed.  (ECF No. 16.)

Under Social Security regulations, the opinion of a treating physician is entitled to

controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence

in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20

C.F.R. § 404.1527(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent

with the other substantial evidence in the case record means only that the opinion is not entitled

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*,

2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating

physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating

source medical opinions are still entitled to deference and must be weighed using all of the

11

factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[5]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431,

---

[5] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Here, it is undisputed that Dr. Ahmed was Buchert's treating psychiatrist, as he first saw Buchert in March of 2010, a few weeks before Buchert's date last insured, and continued treating Buchert on multiple occasions up until at least October of 2011.[6] Buchert argues the ALJ did not give good reasons for failing to ascribe controlling weight to the limitations assessed by Dr. Ahmed in a form completed in September of 2011. (ECF No. 16 at 11-12.)

Pursuant to 20 C.F.R. § 404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more

---

[6] As noted above, the parties do not cite any medical records indicating psychiatric treatment by Dr. Ahmed or any other source between September of 2010 and October 2011.

13

weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.... Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." The ALJ specifically noted that Dr. Ahmed gave no explanation whatsoever in the September 2011 form for the severe limitations he assessed other than an indication to "see medical records." (Tr. 22.) Indeed, a review of the questionnaire indicates that Dr. Ahmed neglected to complete much of the form, simply indicating "see medical records" where certain information was requested. (Tr. 341-43.) Where the form asked the source to describe the clinical findings that support the severity of limitations assessed, no response was given. (Tr. 341.)

As such, under the rules, Court cannot find that it was inappropriate for the ALJ to discount Dr. Ahmed's opinion given the lack of any explanation for the assessed limitations. In addition, ALJ discussed Dr. Ahmed's initial evaluation of Buchert (Tr. 20), as well as treatment notes that both pre-date and post-date Dr. Ahmed's functionality opinion. (Tr. 21-22.) The ALJ discusses generally that the treatment notes indicate Buchert was doing better on medication, that he reported only occasional auditory hallucinations, and that his stress and symptoms were minimized with treatment and medication. (Tr. 22-23.) The ALJ points out that the treatment notes give no indication that Buchert is unable to perform daily activities due to his psychiatric illness.[7] *Id.* The ALJ further explained that Dr. Ahmed's opinion that Buchert would miss more than four days of work per month, was "inconsistent with his own treatment notes or those of the care providers at Unisom." (Tr. 23.) While courts routinely remand cases where an ALJ simply

---

[7] Buchert emphasizes that his insight and judgment were "only fair" in Dr. Ahmed's treatment notes. (ECF No. 16 at 12.) It is unclear how such an opinion supports the very serious functional limitations found by Dr. Ahmed, and Buchert makes no attempt at an explanation.

concludes, without explanation, that a treating physician's opinion is unsupported by the record or treatment notes, this is not such a case.

Finally, Buchert argues that the ALJ failed to consider the regulatory factors found in 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).  (ECF No. 16 at 13-14.)  This is simply inaccurate. In deciding the weight to ascribe to an opinion, an ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors which tend to support or contradict the opinion.  *See, e.g., Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).  However, "[n]othing in [§ 404.1527] requires an express discussion of each factor."  *Baxter v. Astrue*, 2012 U.S. Dist. LEXIS 1171 at *16 (D. Md. Jan. 4, 2012); *see also McClain-nelson v. Comm'r of Soc. Sec.*, 2014 WL 988910 at *7 (E.D. Mich., Mar. 13, 2014) (an ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527); *Little v. Colvin*, 2013 U.S. Dist. LEXIS 179610 at *8 (E.D.N.C. Dec. 21, 2013).  Other courts have also indicated that simply because an ALJ does not explicitly discuss every factor listed at 20 C.F.R. § 404.1527, "there is no reason to speculate that the ALJ did not, in fact, consider them."  *See, e.g., Cooper v. Astrue*, 2010 WL 5557448 (W.D. Ky. Oct. 15, 2010).  While the ALJ did not expressly discuss Dr. Ahmed's specialty or the length of the treatment relationship when he assessed the weight to be ascribed to his opinion, this Court cannot conclude that he did not consider them.  Earlier in the ALJ's decision, he specifically references Dr. Ahmed performing a psychiatric evaluation and discusses a fair number of the psychiatric treatment records of Dr. Ahmed.  Clearly, the ALJ was aware of Dr. Ahmed's specialty and considered

15

that in his evaluation.  Furthermore, the ALJ mentions the date of Dr. Ahmed's initial evaluation of Buchert in March of 2010, Dr. Ahmed's most recent treatment in October of 2011, and a myriad of treatment notes in between.  Again, this reflects that the ALJ was clearly aware of the length of the treatment relationship as well as the frequency of treatment.  In rejecting Dr. Ahmed's unexplained opinion regarding Buchert's functional limitations, the ALJ addressed the supportability of the opinion, or, more accurately the lack thereof, as well the inconsistency of the opinion with the record as a whole, including Dr. Ahmed's own treatment notes.  As such, the ALJ adequately explained that Buchert's positive response to treatment and minimal symptoms did not support Dr. Ahmed's opinion as to Buchert's functional limitations.

Therefore, the Court finds that the explanation and reasons provided by the ALJ were legally sufficient to reject the identified portions of Dr. Ahmed's opinion.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White
U.S. Magistrate Judge

Date: March 27, 2014